# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| CRAIG CUNNINGHAM, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO.  4:17-CV-00793-ALM- |
| | § | CAN |
| v. | § | |
| | § | |
| CBC CONGLOMERATE LLC, ET AL., | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court are Defendants CBC Conglomerate, LLC ("CBC") and USFFC,

Inc.'s ("USFFC") (collectively, "Defendants") Motion for Partial Summary Judgment [Dkt. 123]

and Plaintiff Craig Cunningham's ("Plaintiff") Partial Motion for Summary Judgment [Dkt. 125].

After reviewing the Motions [Dkts. 123; 125], the Parties' Responses [Dkts. 127; 130], and all

other relevant filings, the Court recommends that Defendants' Motion for Partial Summary

Judgment [Dkt. 123] be **GRANTED IN PART** and **DENIED IN PART**; and Plaintiff's Motion

for Partial Summary Judgment [Dkt. 125] be **DENIED**.

## BACKGROUND

On November 9, 2017, Plaintiff initiated the instant lawsuit by filing his Original

Complaint [Dkt. 1].[1]  On September 17, 2018, Plaintiff filed his Amended Complaint—the live

pleading in this case—asserting claims for (1) violations of the Telephone Consumer Protection

Act ("TCPA"), 47 U.S.C. §§ 227(b) and (c); (2) invasion of privacy; (3) violations of the Fair Debt

Collection Practices Act ("FDCPA"); and (4) violations of the Texas Business and Commerce

---

[1] Plaintiff additionally asserted claims against Bruce Phillip Hood, Carey Gorge Howe, and Jay Singh ("Individual Defendants") [Dkt. 1].  On February 5, 2019, Plaintiff's claims against the Individual Defendants were dismissed for lack of jurisdiction [Dkt. 100].  Only Plaintiff's claims against CBC and USFFC currently remain before the Court.

Code § 305.053 [Dkt. 48 at 14-16].  Therein, Plaintiff alleges Defendants "are liable for the calls

placed on their behalf and for their benefit to the Plaintiff's cell phone 615-212-9191 offering

unsolicited student loan consolidation services" [Dkt. 48 at 4].[2]  Specifically, Plaintiff asserts

Defendants made a minimum of seventy-three calls between August 2017 and October 2017,

"[e]ach and every call had a delay of 3-4 seconds of dead air indicating the calls were initiated

using an automated telephone dialing system," and none of the calls were related to any emergency

purpose [Dkt. 48 at 4-6].  Plaintiff further contends he "never gave . . . any of the [D]efendants his

cell phone number and never gave express or implied consent for the [D]efendants . . . to call his

cell phone using an automated telephone dialing system or with a pre-recorded message" [Dkt. 48

at 6].  Plaintiff avers Defendant USFFC called Plaintiff on behalf of Defendant CBC to offer

Defendant CBC's services in each call it made to Plaintiff [Dkt. 48 at 7].  Plaintiff alleges

Defendant CBC hired Defendant USFFC "to place calls on their behalf to individuals looking for

student loan consolidation" and is therefore liable for those calls placed on their behalf [Dkt. 48 at

7-8].  Additionally, Plaintiff posits Defendants are liable for failing to maintain an internal do-not-

call list and train their agents on the use of such list, for placing calls using pre-recorded messages

that do not identify the caller or seller of goods or services, and for making false or misleading

representations in an attempt to collect a debt [Dkt. 48 at 14-15].[3]

On July 19, 2019, Defendants filed their Motion for Partial Summary Judgment requesting

the Court grant summary judgment as to Plaintiff's TCPA and Texas Business and Commerce

Code claims for calls allegedly placed after October 12, 2017 [Dkt. 123 at 1].  The same day,

---

[2] Plaintiff's Amended Complaint [Dkt. 48] is properly before the Court.

[3] Notably, this is not Plaintiff's first lawsuit against Defendants.  On April 16, 2015, Plaintiff brought a similar lawsuit against Defendants for violations of the TCPA regarding various calls made in 2015 to Plaintiff's cell phone number 615-212-9191, which is the same number at issue in the instant case.  *See Cunningham v. CBC Conglomerate, LLC*, 3:15-CV-439 (M.D. Tenn. Apr. 16, 2015) (E.C.F. #1) (hereinafter  the "2015 Lawsuit").  After Plaintiff advised the Court that the 2015 Lawsuit had been resolved, the Middle District Court of Tennessee dismissed the 2015 Lawsuit with prejudice.  *See 2015 Lawsuit* (E.C.F. #46-47).

Plaintiff filed his Partial Motion for Summary Judgment requesting summary judgment for "all calls in this case for violations of 47 USC [sic] 227(c)(5) violations [sic] as codified under 47 CFR [sic] 64.1200(d)" [Dkt. 125 at 1].   Defendants filed their Response to Plaintiff's Motion on August 9, 2019 [Dkt. 127], and Plaintiff filed his Response to Defendants' Motion on August 12, 2019 [Dkt. 130].   The Parties' Motions for Partial Summary Judgment are ripe for consideration.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).   Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).   A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted).   The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247.   If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense . . . ." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).   But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's

case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. And the Court need only consider the record materials actually cited by the parties, though the Court may consider the entire record. FED. R. CIV. P. 56(c)(3).

## EVIDENCE PRESENTED

Defendants submit the following summary judgment evidence in support of their Motion:

Exhibit 1 [Dkt. 123-1]: Plaintiff's Responses to CBC's Requests for Admission;

Exhibit 2 [Dkt. 123-2]: Excerpts from the Deposition of Craig Cunningham (April 9, 2019);

Exhibit 3 [Dkt. 123-3]: Audio Recording of October 12, 2017 telephone call (File No. 171012182150I0343);

Exhibit 4 [Dkt. 123-4]: Audio Recording of October 12, 2017 telephone call (File No. 171012184706O0319);

Exhibit 5 [Dkt. 123-5]: Audio Recording of October 13, 2017 telephone call (File No. 171013173911O0334);

Exhibit 6 [Dkt. 123-6]: Audio Recording of October 23, 2017 telephone call (File No. 171023181055O034); and

Exhibit 7 [Dkt. 123-7]: Signed and sworn affidavit of records custodian certifying records and documents produced by Magna5, LLC.

\*\*\*

Defendants additionally submit the following summary judgment evidence in opposition to Plaintiff's Motion:

Exhibit 8 [Dkt. 127-1]: Excerpts from the Deposition of Jay Singh (May 10, 2019); and

Exhibit 9 [Dkt. 127-2]: Call logs (USFFC 000001-000003).

\*\*\*

Plaintiff submits the following summary judgment evidence in support of his Motion:

Exhibit A [Dkt. 125-1]: Defendant USFFC's Objections and Responses to Plaintiff's Request for Production;

Exhibit B [Dkt. 125-2]: Defendant USFFC's Objections and Amended Answers to Plaintiff's Interrogatories;

Exhibit C [Dkt. 125-3]: Signed and sworn affidavit of records custodian certifying records and call records produced by Magna5, LLC; and

Exhibit D [Dkt. 125-4]: Plaintiff's Original Complaint in the 2015 Lawsuit.

\*\*\*

Plaintiff additionally submits the following summary judgment evidence in opposition to

Defendants' Motion:

Exhibit A [Dkt. 130-1]: Defendant USFFC's Objections and Responses to Plaintiff's Request for Production;

Exhibit B [Dkt. 130-2]: Defendant USFFC's Objections and Second Amended Answers to Plaintiff's Interrogatories;

Exhibit C [Dkt. 130-3]: Defendant CBC's Objections and Answers to Plaintiff's Interrogatories; and

Exhibit D [Dkt. 130-4]: Call logs (USFFC 001-003).

\*\*\*

No objections have been made to the summary judgment evidence.

## ANALYSIS

Defendants move for partial summary judgment as to Plaintiff's claims under the TCPA[4]

and the Texas Business and Commerce Code for all calls allegedly placed on or after October 12,

---

[4] In Plaintiff's Amended Complaint, Plaintiff seeks relief under (1) 47 U.S.C. §§ 227(c)(5) and 227(b); (2) the Fair Debt Collections Practices Act; (3) Texas Business and Commerce Code § 305.053; and (4) a claim for "Invasion of Privacy-Intruion [sic] on Seclusion" [Dkt. 48 at 14-16].  Defendants' Motion broadly seeks summary judgment on all TCPA claims and the Texas Business and Commerce Code § 305.053 [Dkt. 123]; however, Defendants thereafter cite only 227(b)(1)(B) and 305.053.  Indeed, the sum total of Defendants' analysis appears over the course of one page and Defendants do not cite 227(c).  The Court addresses herein only the claims Defendants specifically reference in their Partial Motion for Summary Judgment: the claims under § 227(b) and § 305.053.  *See e.g.*, *Boggs v Krum Independent School District*, 376 F. Supp. 3d 714 (E.D. Tex. March 21, 2019).

2017, asserting that Defendant did not violate the TCPA because Plaintiff consented to be called by El Docs—the independent contractor who placed the calls to Plaintiff [Dkt. 123 at 1-2].

Notably, Defendants only move for summary judgment under 47 U.S.C. § 227(b) and the Texas Business and Commerce Code § 305.053 for calls made on behalf of Defendants on or after October 12, 2017.  All calls occurring *prior* to October 12, 2017 are not the subject of Defendants' Motion and after consideration of Plaintiff's Motion should proceed to trial.[5]

In their Motion for Summary Judgment, Defendants specifically argue, "[t]he summary judgment evidence indicates [Plaintiff] called the Defendants on October 12, 2017 and expressed a desire in the student loan services offered by the Defendants" [Dkt. 123 at 2].  Defendants contend Plaintiff's conduct on the October 12, 2017 calls—such as confirming his phone number, providing the independent contractor with personally sensitive information, and requesting more information—constituted express consent to be contacted; therefore, any phone calls made on behalf of Defendants after October 12, 2017, did not violate the TCPA [Dkt. 123 at 2, 3]. Defendants further point to additional calls on October 13 and October 23 in which Plaintiff gave his oral consent to move forward with Defendants' services [Dkt. 123 at 4].  In support of its position, Defendants cite a single case: *Morris v. Hornet Corp.*, 2018 U.S. Dist. LEXIS 170945, at *17-19 (E.D. Tex. Sept. 14, 2018) [Dkt. 123 at 5].

Importantly, the burden is on Defendant "to prove its affirmative defense that it had consent to call Plaintiff's cell phone." *Cunningham v. Health Plan Intermediaries Holdings, LLC*, No. 8:18-CV-919-SCB-TGW, at 10 (M.D. Fla. Aug. 7, 2019) (citing *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1304-05 (11th Cir. 2015)); *see also Moser v. Health Ins.*

---

[5] Defendants assert a total of eight calls were placed to Cunningham before Cunningham called El Docs on October 12, 2017 and asked to enroll in the loan forgiveness service [Dkt. 127 at 10].  It is unclear the number of calls that are alleged to have occurred after October 12, 2017, the Parties assert various different numbers.

*Innovations, Inc.*, 17-CV-1127-WQH-KSC, 2019 WL 3719889, at \*3 (S.D. Cal. Aug. 7, 2019) (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017); *In the Matter of Rules and Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 565 (Jan. 4, 2008)) ("Express consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof.").

In response to Defendants' Motion, Plaintiff argues (1) he never gave prior express written consent to be contacted by Defendants, as is required under the Federal Communications Commission's ("FCC") 2012 Order (*In the Matter of Rules and Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830 (February 15, 2012)) [Dkt. 130 at 3-4]; (2) "providing a phone number to be called for service calls is not consent to be called for telemarketing purposes" [Dkt. 130 at 9]; (3) prior express written consent must be for a specific party under 47 C.F.R. § 64.1200(f)(8), and here Defendants represented themselves as the "United States Federal Loan Forgiveness Department" rather than their true corporate identity [Dkt. 130 at 11]; and (4) Defendants were on notice that Plaintiff did not want to receive telemarketing calls based on the prior lawsuit, which makes Plaintiff's case distinguishable from *Morris v. Hornet Corp.* [Dkt. 130 at 3].

### *Defendants' Motion: TCPA Violations Related to Automatic Telephone Dialing System under 47 U.S.C. § 227(b)*

Congress passed the TCPA in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S 368, 370 (2012). Congress intended "to protect individual consumers from receiving intrusive and unwanted calls." *Gager v. Dell Fin. Servs.*, 727 F.3d 265, 268 (3d Cir. 2013) (citing *Mims*, 565 U.S. at 372). Congress also authorized the FCC to implement rules and regulations enforcing the TCPA. 47 U.S.C. § 227(b)(2).

Subsection (b) of the TCPA governs "Restrictions on use of automated telephone equipment."  47 U.S.C. § 227(b).  Section 227(b) of the TCPA makes it unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service for which the called party is charged for the call," or "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party."  47 U.S.C. § 227(b)(1)(A)(iii), (B).  An "automatic telephone dialing system" is defined in the TCPA as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  *Id.* § 227(a). Subsection (b)(3), in turn, provides a private right of action for a "violation of this subsection or the regulations prescribed under this subsection," including "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater . . . ." *Id.* § 227(b)(3).

In the context of § 227(b) ("Restrictions on the use of automated telephone equipment") and "[i]n order to establish the essential allegations '[t]o state a claim under the TCPA for calls made to a cellular phone, a plaintiff is required to allege that [1] a call was made to a cell or wireless phone by the use of any automatic dialing system or an artificial or prerecorded voice and [2] without prior express consent of the called party.'"  *Cunningham v. Techstorm, LLC*, 2018 WL 3118400, at *3 (N.D. Tex. May 29, 2018); 47 U.S.C. § 227(b)(1)(A)); *Chambers v. Green Tree Servicing LLC*, No. 3:15-CV-1879-M-BN, 2017 WL 2693565, at *1 (N.D. Tex. June 20, 2017)).

***Express Consent Affirmative Defense***

At present, "[t]he FCC has [a] two-tier standard for "prior express consent" to calls made using an ATDS: (i) calls containing advertisements or constituting telemarketing require prior express *written* consent; and (ii) all other calls, other than those made for emergency purposes or to collect a debt owed to or guaranteed by the United States, require prior express consent." *Pine v. A Place for Mom, Inc.*, 2019 WL 1531689, at \*2 (W.D. Wash. Apr. 9, 2019) (citing 47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(a)) (emphasis in original). "For non-telemarketing calls, prior express consent is satisfied 'by the simple act of giving one's phone number directly to a caller.'" *Pine*, 2019 WL 1531689, at \*2 (citing *Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466, 477 (S.D.N.Y. 2018)). "In contrast, prior express *written* consent [as discussed more fully *infra*] means 'an agreement, in writing, bearing the signature of the person called' that 'clearly authorizes' the ATDS-initiated telemarketing call." *Pine*, 2019 WL 1531689, at \*2 (citing 47 C.F.R. § 64.1200(f)(8)). Defendants argue that the calls at issue fall under the second tier for consent and that Plaintiff orally consented to any calls on or after October 12, 2017, because he contacted Defendants on October 12, 2017, and expressed interest in the student loan services offered by Defendant.[6]

***Person-to-Person or Manual Calls***

As a preliminary matter, § 227(b) generally does not apply to manual or live, person-to-person calls. *See J.T. Hand v. ARB KC, LLC*, 2019 WL 6497432 (W.D. Mo. Dec. 3, 2019) (quoting *Moser v. F.C.C.*, 46 F.3d 970, 975 (9th Cir. 1995) ("The restrictions in the [TCPA] leave open many alternative channels of communication, including . . . all live solicitation calls."); *In re:*

---

[6] Express consent does not cover any calls that may have been placed prior to Plaintiff's call with an independent contractor working on behalf Defendants on October 12, 2017, wherein Plaintiff expressed interest in Defendants' services and confirmed his contact information.

*Monitronics Int'l, Inc.*, 223 F. Supp. 3d 514, 521 (N.D. W. Va. 2016), *aff'd sub nom. Hodgin v.*

*UTC Fire & Sec. Americas Corp., Inc.*, 885 F.3d 243 (4th Cir. 2018) ("First, while in-person

telemarketing calls may be harassing to the consumer, they do not violate the TCPA. It is only

when the calls are "robo-calls" or are made to persons on the do-not-call list that the calls violate

the Act."). Moreover, the Fifth Circuit concluded that "[t]o be liable under the 'artificial or

prerecorded voice' section of the TCPA . . . a defendant must make a call and an artificial or

prerecorded voice must actually play." *Ybarra v. Dish Network, LLC*, 807 F.3d 635, 640 (5th Cir.

2015). Here, Defendants have provided audio recordings of four calls: two on October 12, 2017

[Dkts. 123-3; 123-4], one on October 13, 2017 [Dkt. 123-5], and one on October 23, 2017

[Dkt. 123-6].[7] The summary judgment evidence does not reflect that any ATDS was used for any

of these calls; rather the recordings demonstrate manual, person-to-person calls, wherein Plaintiff

initiated and then affirmed interest in Defendants' services. The first call includes Plaintiff stating,

"I just called." Plaintiff also provided and confirmed his personal contact information with

Defendants during the calls. Because the calls on October 12, 2017, October 13, 2017, and

October 23, 2017, were manual or live, person-to-person calls, those calls do not fall within the

scope of § 227(b).[8]

### *Initiation of Phone Calls*

As set forth *supra*, Defendants contend that because Plaintiff initiated phone calls to

Defendants' independent contractor asking about the student loan program, and specifically how

to enroll [Dkts. 123 at 3; 123-3], Plaintiff consented to the aforementioned manual calls and also

---

[7] Plaintiff has not objected to Defendants' summary judgment evidence. Notably, at deposition, Plaintiff additionally testified that the "[calls] do say what they say" [Dkt. 123-2 at 7].

[8] As to all other calls occurring after October 12, 2017 (for which no recordings are provided), it remains Defendants' burden "to prove its affirmative defense that it had consent to call Plaintiff's cell phone." *Cunningham v. Health Plan Intermediaries Holdings, LLC*, No. 8:18-CV-919-SCB-TGW, at 10 (M.D. Fla. Aug. 7, 2019) (citing *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1304-05 (11th Cir. 2015)).

any further calls from Defendant [Dkt. 123 at 6].  Defendants broadly argue Plaintiff "consented

to the calls made by El Docs on behalf of Defendants" starting on October 12, 2017, and continuing

thereafter, going so far as to say this includes "any phone calls placed by El Docs" to Plaintiff

[Dkts. 127 at 10; 123 at 2].  More narrowly, Defendants state Plaintiff "provided his express

consent for Defendants to contact him for the purpose of completing enrollment in the loan

forgiveness program" and point to Plaintiff's provision of his Social Security Number and credit

card number to buttress such assertion [Dkts. 123 at 6; 127 at 9].

Plaintiff cites two cases to support his contra-argument that "[p]retending to be interested

in a telemarketer's products is not consent to be called using an automated telephone dialing

system" [Dkt. 130 at 8]: *Cunningham v. Rapid Response Monitoring Services, Inc.*, 251 F.Supp.3d

1187 (M.D. Tenn. 2017) [Dkt. 130 at 8] and *Shelton v. National Gas & Electric, LLC*, No. 17-

4063, 2019 WL 1506378 (E.D. Pa. Apr. 5, 2019).  Neither of Plaintiff's cited cases support his

position; each involve a standing analysis and whether Plaintiff could establish standing to assert

a TCPA claim where he may have sought out or accepted services he was offered—not a summary

judgment analysis in which the movant must demonstrate that he or she is entitled to a judgment

as a matter of law.  *See id.* at 1196-97; *see also* FED. R. CIV. P. 56(a). Thus, while the cases

concluded that the plaintiff had "a concrete and particularized injury sufficient to confer

standing"—they did not conclude that "pretending to be interested" in a product is not effective

consent under the TCPA as a matter of law.

The evidence before the Court reflects that Plaintiff orally provided express consent to calls

*related to the loan service program* [Dkt. 123 at 3-4].  Plaintiff himself called Defendants [Dkt.

123-3], which Plaintiff confirmed during his deposition [Dkt. 123-2 ("You made outbound calls

to some of the numbers you associate with USFFC and CBC; correct?  Yes")].  Plaintiff, during

the recordings provided to the Court, explicitly asked how to enroll in the program, what paperwork needed to be completed, and how to speed up the process of enrolling [Dkts. 123-3; 123-4; 123-5; 123-6]. When difficulties arose, Plaintiff scheduled or assented to follow-up calls regarding the enrollment process—including technical problems that arose during enrollment [Dkts. 123-3; 123-4; 123-5; 123-6]. Plaintiff specifically confirmed that he wanted to go ahead with Defendants' services and provided his consent for Defendants to enroll Plaintiff in the program [Dkts. 123-5; 123-6]. During the calls, Plaintiff confirmed his date of birth, telephone number, email address, Social Security number, and credit card information.

Nevertheless, Plaintiff's actions do not constitute Plaintiff's assent to *all* calls from Defendants. *See Van Patten*, 847 F.3d at 1045 (finding that the provision of a phone number does not grant prior express consent "to any and all contact"). Rather, Plaintiff assented to calls for the "limited purpose" of the loan forgiveness program. *See In the Matter of Rules and Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1840 (Feb. 15, 2012) (the "2012 Order"). In the 2012 Order, the FCC explained that "Consumers who provide a wireless phone number for a limited purpose—for service calls only—do not necessarily expect to receive telemarketing calls that go beyond the *limited purpose* for which oral consent regarding service calls may have been granted." *Id.* (emphasis added). Similarly, the Eleventh Circuit has found that, under § 227(b)(1), an individual provides "prior express consent" to be called or texted at the number provided where (1) he has provided his number to the party calling or texting him; and (2) there is some relation between the communications and the reason for which he provided his number. *See Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1308 (11th Cir. 2015); *see also Morris v. Copart*, 4:15-CV-724, 2016 WL 6608874, at *8 (E.D. Tex. Nov. 9, 2016) (discussing the FCC's order and finding the plaintiff consented to being "contacted for the purpose

of completing the donation of the vehicle" because the plaintiff originally advised the defendant

"that he desired to donate a vehicle").  The purpose behind the provision of the phone number,

therefore, is instructive to determine whether a specific call falls within the limited purpose of the

party's prior express consent.  The fact that a consumer provides his phone number to a business

does not permit unrestricted access to that number.

Defendants have not proffered any evidence regarding the content of the phone calls

Plaintiff received other than the calls on October 12, 2017, October 13, 2017, and October 23,

2017.  Because the Court is unable to ascertain the subject matter of the remaining calls,

Defendants cannot meet their burden as to their affirmative defense of consent as to any other calls.

Stated differently, the Court is unable to evaluate whether Plaintiff's consent—if any—permitted

the calls made on behalf of Defendants after October 12, 2017 (other than those on October 13 and

October 23, 2017).

And different from *Morris* where a discrete number of calls existed and the purpose of each

of the calls was clear,[9] in connection with the summary judgment briefing, Defendants assert that

the independent contractor who actually made the calls on their behalf – El Docs – markets twenty-

---

[9] Plaintiff also argues that Defendants were on notice that Plaintiff did not want to receive telemarketing calls based on the prior lawsuit, which makes Plaintiff's case further distinguishable from *Morris v. Hornet Corp*.  In support of Plaintiff's argument that Defendants were on notice following Plaintiff's first lawsuit, Plaintiff cites *Cunningham v. Crosby Billing Services, Corp.*, No. 4:18-CV-00043-ALM-CAN, 2018 WL 6424792 (E.D. Tex. Oct. 14, 2018) [Dkt. 125 at 3].  Specifically, Plaintiff points to the following language in the opinion: "certainly the initiation of a lawsuit filed against Defendants for making automated calls to Plaintiff's cellphone in violation of the TCPA, which is pleaded to be the same cell phone number as the instant case, gives Defendants reason to know that their conduct may potentially violate the TCPA" *Id.* at *10.  Thereafter, the Court found the "phone calls were made knowingly and willfully in violation of the TCPA and that a trebling of damages is appropriate in the instant case" *Id.* (citing *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 899 (W.D. Tex. 2001)).  In response, Defendants argue that the case merely involved Plaintiff's Motion for Default Judgment, which thus required the Court "to take the factual allegations of the complaint as true due to the Plaintiff's default" [Dkt. 127 at 10].  Plaintiff's position is unavailing under the circumstances presented here. The uncontroverted evidence before the Court includes calls on October 12, 2017, October 13, 2017, and October 23, 2017, between Plaintiff and a human independent contractor working on behalf of Defendants.  The Court is unpersuaded that Defendants were on notice because of a prior lawsuit filed when Plaintiff himself called and sought out the services.

five different products and placed calls on behalf of many companies, including Defendants [Dkts. 127 at 4; 127-1 at 3].[10]  Thus, the Court cannot assume that all calls placed to Plaintiff after October 12, 2017 related to loan forgiveness; Defendant is not entitled to summary judgment on the issue of consent.

### *Prior Express Written Consent*

Plaintiff further argues that even if the Court had been provided the substance of the calls, Defendants still could not prevail on its affirmative defense as the calls at issue fall, not under the second, but the first tier of consent and require written express consent.  More specifically, Plaintiff argues such prior express written consent is required under the FCC's 2012 Order: *In the Matter of Rules and Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830 (February 15, 2012).  In the 2012 Order, the FCC stated that it "revise[d] our rules to require express written consent for all *autodialed or prerecorded telemarketing calls* to wireless numbers and residential lines . . . ."  27 F.C.C. Rcd. at 1831 (emphasis added).

Since 2013, a calling entity needs to show that a consumer provided written clear and unmistakable intent to receive calls via an ATDS or artificial or prerecorded voice message. 47 C.F.R. § 64.1200(a)(2) ("No person or entity may . . .  [i]nitiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice . . . other than a call made with the prior express written consent of the called party . . . .").  The regulation is clear that in the telemarketing context, prior express consent truly means prior express consent.  47 C.F.R. § 64.1200 requires that the written consent "clearly authorize[]" and be a "clear and conspicuous

---

[10] To further buttress this point, the deposition transcript of Jay Singh reflects the following discussion "So, Craig, if you got a second phone call that comes from El Docs, okay, how do you El Docs is pitching you for USFFC and not a Dell Computer?" [Dkt. 127-1].

disclosure." *Health Ins. Innovations, Inc.*, 2019 WL 3719889, at *4 (quoting 47 C.F.R. § 64.1200(f)(8)(i)).

"[F]or purposes of the TCPA, express written consent means: 'The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages *using an automatic telephone dialing system or an artificial or prerecorded voice*, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.'" *Health Ins. Innovations, Inc.*, 2019 WL 3719889, at *4 (quoting 47 C.F.R. § 64.1200(f)(8)) (emphasis added); *see also Morris v. Modernize, Inc.*, 2018 WL 7076744, at *2-3 (W.D. Tex. Sept. 27, 2018) (discussing the "prior express written consent" definition under 47 C.F.R. § 64.1200(f)(8), which requires a "clear and conspicuous disclosure").[11]   Here, Defendants fail to produce any summary judgment evidence that they had express written consent to make calls to Plaintiff's cell phone via an ATDS.[12]

In sum, Defendants, therefore, are entitled to summary judgment for Plaintiff's 47 U.S.C. § 227(b) claims for calls between Defendants and Plaintiff on October 12, 2017, October 13, 2017, and October 23, 2017.  Defendants have not, however, at this juncture met their summary judgment burden for all other calls, as Defendants have not established that there is no genuine issue of material fact as to the content and nature of all other calls.  *See Morris v. Hornet Corp.*, 4:17-CV-00350, 2018 WL 4781273, at *6 (E.D. Tex. Sept. 14, 2018).

---

[11] As the Sixth Circuit interprets the cited regulation, "the FCC's regulations for telemarketers now require a more specific type of consent—namely, that the called party consents, in writing, to being called by an auto-dialer." *Hill v. Homeward Residential, Inc*., 799 F.3d 544, 552 (6th Cir. 2015) (citing 47 C.F.R. 64.1200(f)(8)).

[12] Plaintiff argues that the 2012 Order states there must be express written consent for all autodialed or prerecorded telemarketing calls [Dkt. 130 at 3-4].  Notably, Plaintiff has not demonstrated that all calls were autodialed or prerecorded.

Moreover, because the Court concluded Defendants are entitled to summary judgment as to Plaintiff's § 227(b) claim under the TCPA for calls on October 12, 2017, October 13, 2017, and October 23, 2017, Defendants are also entitled to summary judgment as to calls on those dates for Plaintiff's claim under the Texas Business and Commerce Code.  *See Morris*, 2018 WL 4781273, at *9.

### *Plaintiff's Motion: TCPA Violations Related to Residential Telephone Subscribers under 47 U.SC. § 227(c)*

In his Partial Motion for Summary Judgment, Plaintiff "moves for summary judgment for all calls in this case for violations of 47 USC [sic] 227(c)(5) violations as codified under 47 CFR [sic] 64.1200(d) against all defendants" [Dkt. 125 at 1].[13]  Plaintiff makes three arguments in support of his Motion: (1) "Defendants were on notice from Plaintiff's previous lawsuit that he did not want to receive telemarketing calls" [Dkt. Plaintiff makes three arguments in support of his Motion: (1) "Defendants were on notice from Plaintiff's previous lawsuit that he did not want to receive telemarketing calls" [Dkt. 125 at 2-3]; (2) "Defendants did not maintain an internal Do-not-call Policy and failed to produce one . . . in violation of 47 CFR [sic] 64.1200(d)(1)" [Dkt. 125 at 2]; and (3) "Defendants falsely identified themselves in violation of 47 CFR [sic] 64.1200(d)(4)" [Dkt. 125 at 2].

Defendants respond that fact issues exist which would preclude granting Plaintiff summary judgment: (1) how many calls occurred; (2) whether those calls were made on behalf of Defendant; and (3) whether Plaintiff consented to any of the calls [Dkt. 127 at 5, 10].  Defendants also posit (as argued in connection with their own Motion) that (1) Plaintiff's "conduct constituted express consent to be contacted" [Dkt. 127 at 2]; (2) "[t]he TCPA does not provide a private cause of action

---

[13] Plaintiff's Partial Motion for Summary Judgment seeks relief under 47 U.S.C. § 227(c)(5) [Dkt. 125].  Plaintiff does not assert he is entitled to a judgment as a matter of law for Plaintiff's claims under 47 U.S.C. § 227(b), the Texas Business and Commerce Code, or for invasion of privacy.

for rules pertaining to alleged violations of the technical and procedural standards, including

Section 64.1200(d)(4)" [Dkt. 127 at 2, 6]; and (3) Plaintiff has not produced evidence to establish

Defendants "identif[y] themselves as agents of the United States" and that calls were made on

behalf of Defendants [Dkt. 127 at 2, 4].

§ 227(c)(5) of the TCPA allows a private right of action for "a person who has received

more than one telephone call within any 12-month period by or on behalf of the same entity" in

violation of the prescribed regulations.  47 U.S.C. § 227(c)(5).  § 227(c) is titled "Protection of

subscriber privacy rights" but specifically addresses the position of "residential telephone

subscribers' privacy rights to avoid receiving telephone solicitations to which they object" *Id.*

§ 227(c)(5).  47 C.F.R. § 64.1200(d), which was promulgated under § 227, states that "[n]o person

or entity shall initiate any call for telemarketing purposes to a *residential telephone subscriber*

unless such person or entity has instituted procedures for maintaining a list of persons who request

not to receive telemarketing calls made by or on behalf of that person or entity."  47 C.F.R. §

64.1200(d) (emphasis added).  "The regulation relates to a marketer's duty to prepare internal

policies to receive and implement affirmative requests not to receive calls."  *See Bailey v.*

*Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012) (granting the defendant's motion

to dismiss the plaintiff's claim because the plaintiff did not allege that he made an affirmative

request to not receive calls).[14]

---

[14] The Court notes that the plain language of 47 C.F.R. § 64.1200(d) limits redress for violations that concern *residential* telephone subscribers.  Various courts have considered similar claims by Plaintiff and found that the regulation does not encompass Plaintiff's cellular phones.  *See, e.g.*, *Cunningham v. Politi*, No. 4:18-CV-00362-ALM-CAN, 2019 WL 2517085, at *4 (E.D. Tex. Apr. 30, 2019), *report and recommendation adopted*, No. 4:18-CV-362, 2019 WL 2524737 (E.D. Tex. June 19, 2019); *Cunningham v. Sunshine Consulting Group, LLC*, No. 3:16-2921, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018); *Cunningham v. Rapid Capital Funding, LLC*, No. 3:16-02629, 2017 WL 3574451, at *3 (M.D. Tenn. July 27, 2017); *Cunningham v. Spectrum Tax Relief, LLC*, No. 3:16-2283, 2017 WL 3222559, at *7 (M.D. Tenn. July 7, 2017); *Cunningham v. Enagic USA, Inc.*, No. 3:15-0847, 2017 WL 2719992, *5-6 (M.D. Tenn. June 23, 2017); *see also Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1195-96 (M.D. Tenn. 2017) (citing *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250 (11th Cir. 2014) ("To

Plaintiff has not established, as movant, that he is entitled to a judgment as a matter of law under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d).  Plaintiff has not proffered any evidence entitling him to summary judgment.  *See Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004) (finding that a party must establish a specific fact at the summary judgment stage by identifying the corresponding evidence in the summary judgment record).  A fact issue exists regarding the number of calls.  It is unclear to the Court how many calls Plaintiff alleges occurred and/or that are in violation of the TCPA; there is conflicting evidence regarding the number of calls made to Plaintiff.  Indeed, the evidence before the Court that addresses the number of calls include various call logs/records—which conflict with each other and do not illuminate the true number or content of the calls as they each reflect a different number of calls—and audio of the calls from October 12, 2017, October 13, 2017, and October 23, 2017.

Plaintiff asserts that "[b]y seeking summary judgment on all 90 calls on the Magna 5 documents, the Defendants have now conceded that all 90 calls on the Magna 5 documents were placed on behalf of CBC Conglomerate and USFFC by now claiming they had consent to make the calls in the Magna 5 affidavit" [Dkt. 130 at 2].  The Court does not read such concession from Defendants' Motion for Partial Summary Judgment; instead, as discussed *supra*, Defendants contend that Plaintiff consented to any subsequent calls regarding enrollment in the loan forgiveness program [Dkt. 123 at 6].  Such argument does not establish the number of calls.

Plaintiff has not established that there is no genuine issue of material as to the number of calls placed on behalf Defendants.  Plaintiff's request for summary judgment should be denied.

---

start with, the case concerned 47 U.S.C. § 227(b)(1)(B), which prohibits 'initiat[ing] any [prohibited] telephone call to any residential telephone line . . . .' [T]he telephone number in question here . . . is a cell-phone number."); *Bates v. I.C. Sys., Inc.*, No. 09-CV-103A, 2009 WL 3459740, at *1 (W.D.N.Y. Oct. 19, 2009) ("[T]he TCPA differentiates between calls made to cellular and residential lines.")).  Here, too, Plaintiff only alleges a use of his cell phone. Defendants did not move for summary judgment on such ground.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court recommends that Defendants CBC Conglomerate, LLC and USFFC, Inc.'s Motion for Partial Summary Judgment [Dkt. 123] should be **GRANTED IN PART** and **DENIED IN PART**.  Additionally, Plaintiff Craig Cunningham's Partial Motion for Summary Judgment [Dkt. 125] should be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 4th day of December, 2019.**

Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE